UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
KESTON BRAITHWAITE,

                    Plaintiff,

        -against-                          MEMORANDUM & ORDER
                                           22-CV-3750(JS)(AYS)
SUFFOLK COUNTY NEW YORK;
STATE OF NEW YORK;
SUFFOLK COUNTY CORRECTIONAL FACILITY;
ERROL D. TOULON, SHERIFF OF SUFFOLK COUNTY;
JOHN DOE # 1, MAILROOM OFFICER;
JOHN DOE #2, COMMISSARY CORRECTION OFFICER;
JOHN DOE #3, COMMISSARY CORRECTION OFFICER;
JOHN DOE #4, COMMISSARY CORRECTION OFFICER;
JOHN DOE #5, MAILROOM CORRECTION OFFICER;
JOHN DOE #6, MAILROOM CORRECTION OFFICER;
JOHN DOE #7, MAILROOM CORRECTION OFFICER;
JOHN DOE #8, MAILROOM CORRECTION OFFICER;
JOHN DOE #9, MAILROOM CORRECTION OFFICER;
JOHN DOE #10, MAILROOM CORRECTION OFFICER;
JOHN DOE #11, MAILROOM CORRECTION OFFICER;
JOHN DOE #12, MAILROOM CORRECTION OFFICER;

                    Defendants.
------------------------------------------X
APPEARANCES
For Plaintiff:      Keston Braithwaite, pro se
                    759792
                    Suffolk County Correctional Facility
                    110 Center Drive
                    Riverhead, New York  11901

For Defendants:     No appearance.

SEYBERT, District Judge:

        Before the Court is the application to proceed in forma

pauperis ("IFP") (hereafter, the "IFP Application") filed by

incarcerated pro se plaintiff Keston Braithwaite ("Plaintiff") in

relation to his Complaint filed on June 22, 2022 pursuant to 42

U.S.C. § 1983 ("Section 1983").  (See IFP Application, ECF No. 2;

Compl., ECF No. 1.)   On September 26, 2022, Plaintiff filed an

Amended Complaint.  (See Am. Compl., ECF No. 8.)  For the reasons

that follow, Plaintiff's IFP Application is GRANTED; however, the

Amended Complaint is sua sponte DISMISSED pursuant 28 U.S.C. §§

1915(e)(2)(B), 1915A(b) as set forth below.

BACKGROUND[1]

I.   The Amended Complaint

        Like the original Complaint, Plaintiff's Amended

Complaint is submitted on the Court's Section 1983 complaint form

with an additional thirty pages added thereto, as well as 227 pages

of attachments and exhibits, including a copy of the original

Complaint.  Plaintiff continues to name Suffolk County, New York

("Suffolk County"), the State of New York ("NY State"), the Suffolk

County Correctional Facility (the "Jail"), Suffolk County Sheriff

Errol D. Toulon ("Sheriff Toulon"), and twelve unnamed individuals

---

[1] Excerpts from the Amended Complaint are reproduced here exactly
as they appear in the original.  Errors in spelling, punctuation,
and grammar have not been corrected or noted.  Although Plaintiff
has handwritten page numbers, they do not align with the page
numbering assigned by the Court's Electronic Case Filing system
("ECF").  For consistency, the Court references the page numbers
assigned by ECF.  Notably, the Amended Complaint is almost
identical to the original Complaint until the thirtieth page, at
which point Plaintiff has added claims relating to the Jail's
protocols concerning the COVID-19 virus.

who are each alleged to work at the Jail ("John Does 1-12" and collectively, "Defendants") as the Defendants. Plaintiff alleges that his claims arise under the First, Fourth, Eighth, and Fourteenth Amendments and complains about the mail and COVID-19 protocols at the Jail beginning on December 9, 2020. (See Am. Compl., in toto.)

More specifically, Plaintiff complains that: (1) he has received his mail opened; (2) his mail has been "intercepted"; and (3) his outgoing mail is leaving the facility in an "untimely fashion." (Id. at 9.) According to the Amended Complaint, on December 9, 2020, "Plaintiff's legal mail was delivered to him opened." (Id. at 10.) Plaintiff also alleges that he handed two outgoing mail envelopes with the Commissary Officers on January 13, 2022, but on January 18, 2022, Plaintiff discovered that it had not yet left the facility. (See id. at 12-13.) Plaintiff further alleges that he grieved this delay and, following his appeal of the denial of that grievance, on March 10, 2022, the Grievance Coordinator approved the grievance insofar as the delay in sending Plaintiff's outgoing mail did not comport with 9 N.Y.C.R.R. § 7004.2 which requires that all outgoing prisoner correspondence shall be collected and forwarded to the United States Postal Service at least once each business day. (See id.

3

at 14.)  Plaintiff claims that the Grievance Coordinator sent the approved grievance to Sheriff Toulon who "chose to ignor[e] the requirements of the 9 NYCRR Sec. 7004.2(e)(minimum standards for inmate correspondence)" and "failed to supervise his subordinates because Defendants John Doe # 2, John Doe #3, and John Doe #4 continues to mail Plaintiff's mail out untimely."  (Id.)

Plaintiff provides several other examples in support of his claims.  On March 24, 2022, Plaintiff alleges that he gave John Doe #3 one envelope containing "legal mail" and Plaintiff expected it to be delivered to the Postal Service the following day.  (Id.)  However, Plaintiff learned that the officer "who delivers the legal mail to the post office", John Doe # 2, "went on vacation before sending Plaintiff's legal mail out." (Id. at 14-15.)  Accordingly, Plaintiff's legal mail was not brought to the post office until March 30, 2022.  (See id. at 15.)  Plaintiff filed a grievance over this six-day delay, which grievance was accepted.  (See id. at 16.)  The grievance response indicated that "[t]he mail officer inadvertently forgot to send out Inmate Braithwaite's mail before going on vacation.  Corrective action will be taken to prevent this from occurring in the future . . . ."  (Id. at 17.)  Notwithstanding this representation, Plaintiff alleges that his "legal mail was sent out late again."  (Id.)

4

Plaintiff next alleges that on May 17, 2022, he handed legal mail to John Doe #4, but said mail was not mailed the next day as Plaintiff expected, but a week later, i.e., May 24, 2022, because John Doe #4 went on vacation.  (Id.)  According to the Complaint, one of Plaintiff's seven other cases in this Court,[2] Braithwaite v. Gaitman, et al., No. 22-CV-0974 (the "February 2022 Action"), "was prejudiced by the delay of his legal mail being mailed out late."  (Id. at 18.)  More specifically, Plaintiff alleges that he wrote a letter to the Court, dated May 5, 2022, requesting leave to amend his complaint in the February 2022 Action and, on May 17, 2022, he gave the envelope containing the amended

---

[2] Plaintiff is a prolific filer in this Court.  Since January 2022, Plaintiff has filed eight pro se in forma pauperis complaints relating to his arrest and state court criminal prosecution:

- (i)    Case No. 22-CV-0161(JS)(AYS), Braithwaite v. Hon. John B. Collins, et al.;
- (ii)   Case No. 22-CV-0974(JS)(AYS) Braithwaite v. Gaitman, et al., i.e.,(aka, the "February 2022 Action");
- (iii)  Case No. 22-CV-3750(JS)(AYS), Braithwaite v. Suffolk County, et al., i.e., the present action;
- (iv)   Case No. 22-CV-5070(JS)(AYS), Braithwaite v. United States, et al.;
- (v)    Case No. 22-CV-5071(JS)(AYS), Braithwaite v. State of New York, et al.;
- (vi)   Case No. 22-CV-5073(JS)(AYS), Braithwaite v. Suffolk County, et al.;
- (vii)  Case No. 22-CV-5074 (JS)(AYS), Braithwaite v. State of New York, et al.; and
- (viii) Case No. 22-CV-5359(JS)(AYS), Braithwaite v. ADA Kubetz, et al.

complaint to the Commissary Officer which was not mailed out of the Jail until May 24, 2022. (See id.) However, by Order dated May 23, 2022, this Court dismissed Plaintiff's complaint in the February 2022 Action pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1) for failure to allege a plausible claim for relief. (Id. at 18-19; see also February 2022 Action, May 23, 2022 Mem. & Order, ECF No. 11.)[3] Thus, Plaintiff alleges that his claim was prejudiced by the mail delay because he intended to present a conspiracy theory of liability in his amended complaint. (Id. at 19-20; see also Ex. 8 (ECF pp. 177-178) and Ex. 9 (ECF pp. 179-204).)

Additionally, Plaintiff complains that he has not received the green return receipt postcards for six separate letters sent certified mailed in January and February 2022. (See id. at 21-26.) After each of Plaintiff's grievances and appeals relating to his non-receipt of the green postcards were denied (see id. at 21-27), Plaintiff wrote to the Post Master on or about April 8, 2022 inquiring about the status of these green post cards; in response, he received a letter "[l]ater in the month of April"

---

[3]  In its May 23, 2022 Memorandum & Order, the Court also denied leave to amend the complaint given that Plaintiff purported to allege Section 1983 claims against his privately retained criminal defense attorneys who do not act under color of state law. (See id. at 6-10.)

stating that five of the six green post cards "were signed for" and one was "lost in transit." (Id. at 27-28.) Thus, Plaintiff surmises that the "John Doe(s) 5-12 in the mailroom are interfering with Plaintiff's legal mail." (Id. at 28.)

Plaintiff next complains about the protocols at the Jail as related to the COVID-19 virus (see id. at 30-37), which he alleges are "inhumane, excessive, and a[n] overreaction." (Id. at 30.) According to Plaintiff's Amended Complaint, upon his arrival at the Jail on May 20, 2020, as was required of all new arriving inmates in accordance with the Jail's policy, he was immediately quarantined for fourteen days; during that period, each day Plaintiff was in "lockdown" for twenty-three hours and afforded one hour for activities such as showering and making telephone calls. (See id.) Plaintiff alleges that neither he nor the other inmates who went through the quarantine process were tested for the COVID-19 virus. (See id.)

"[U]pon information and belief," Plaintiff complains that corrections officers, civilian staff, and others would enter various locations at the Jail, such as the inmate housing units, medical clinic, and law library, "without taking a COVID test and without many times following COVID-19 protocol of wearing a mask." (Id. at 31.) Thus, Plaintiff complains that he may have been

exposed to the virus.  (Id.)

Plaintiff next complains that, since his initial quarantine upon arrival at the Jail, he has been placed in quarantine five more times.  (Id. at 32.)  On January 20, 2021, another inmate in Plaintiff's housing unit tested positive for the virus and, as a result, the entire unit was placed in quarantine for fourteen days.  (Id.)  Upon the conclusion of the quarantine period, Plaintiff and the other inmates tested negative for the virus and were returned to the general population.  (Id.)  This series of events was repeated on November 12, 2021, December 6, 2021, January 7, 2022,[4] and July 24, 2022.  (Id. at 32-35.) According to the Amended Complaint, "Plaintiff never tested positive for COVID-19 nor did he ever show symptoms of COVID-19 and had to endure six rounds of quarantine."  (Id. at 35.)  While in quarantine, Plaintiff alleges that he was "denied access to the law library."  (Id.)  According to the Amended Complaint, the COVID-19 protocol concerning quarantine "is very similar to the process of punitive segregation, where inmates who misbehave are placed in cells for an amount of days determined at a disciplinary hearing. . . ."  (Id. at 37.)  Thus, Plaintiff complains that he

---

[4]  Plaintiff alleges that the quarantine period for this and the subsequent periods was for only ten, rather than fourteen, days. (See id. at 34-35.)

"has been effectively punished without having been cited for misbehavior, thereby violating Plaintiff's due process rights." (Id.)

As a result of the foregoing, Plaintiff claims to have suffered emotional distress, anguish, pain and suffering, and headaches; therefore, he seeks an unspecified sum as "damages." (Id. ¶ II.A. at 9; see also id. at 38.)

II.  The February 2022 Action

Given Plaintiff's reliance on his prior case, the February 2022 Action, in support of Section 1983 claims he raises in the present Amended Complaint in this action, i.e., that he was denied access to the Court, a brief review of the February 2022 Action is warranted.  As is relevant here, by Memorandum and Order dated May 23, 2022, the Court granted Plaintiff's application to proceed in forma pauperis and sua sponte dismissed his complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against his privately retained defense attorneys in an underlying, then on-going state criminal prosecution.  (See February 2022 Action, Mem. & Order, ECF No. 11; see also id., Compl., ECF No. 1.)  Judgment was entered on May 25, 2022. (See id., Judgment, ECF No. 12.)  The Court denied leave to amend the complaint given that Plaintiff purported to allege Section 1983 claims solely against his privately retained

9

criminal defense attorneys who do not act under color of state law. (See id., Mem. & Oder at 6-10.)  In making that determination, the Court also considered whether liability could be imposed under a conspiracy theory; it carefully reviewed Plaintiff allegations in this regard, but found them to be conclusory and, therefore, insufficient to maintain a conspiracy claim.  (See id. at 7-8.)

Yet unaware of the Court's Memorandum and Order and Judgment, Plaintiff had submitted an amended complaint pursuant to Section 1983 against the same defendants that was received at the Court on May 25, 2022.  (See February 2022 Action, Am. Compl., attached to ECF No. 15.)  However, given the May 23, 2022 dismissal of Plaintiff's original, February 2022 Complaint and the corresponding entry of Judgment, Plaintiff's amended complaint was returned to him without consideration.  (See February 2022 Action, Letter, ECF No. 15.)  On June 13, 2022, Plaintiff timely appealed the Clerk's May 25, 2022 Judgment.  (See February 2022 Action, Notice of Appeal, ECF No. 16.)

Given Plaintiff's pro se status, the Court liberally construed Plaintiff's June 13, 2022 Notice of Appeal as a motion for reconsideration of the Court's May 2022 Memorandum and Order dismissing the complaint.  (See February 2022 Action, Oct. 24, 2022 Mem. & Order, ECF No. 19.)  The Court granted reconsideration,

accepted the amended complaint for filing, and upon careful consideration of the allegations in the amended complaint, again dismissed Plaintiff's Section 1983 claims for failing to allege state action, even under a conspiracy theory.  (See id. in toto.)  Indeed, as to his conspiracy theory, and as was the case with the allegations in his the original, February 2022 Complaint, Plaintiff's allegations were nothing more than conjectures and conclusions.  (See id. at 18-20.)  In sum, even viewed liberally, Plaintiff's pleading of a conspiracy theory in his amended complaint was deficient given the lack of facts that would plausibly support such a claim.  (See id.)  Accordingly, the Court dismissed the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).  (Id. at 20.)

DISCUSSION

I.   Plaintiff's *In Forma Pauperis* Application is Granted

Having reviewed his financial status, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fee.  See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's IFP Application is GRANTED.

11

II.   Consideration of Complaint Under the Section § 1915A Analysis

   A.   Applicable Law

     1. 28 U.S.C. §§ 1915(e)(2), 1915A(a)

The Prisoner Litigation Reform Act ("PLRA") requires federal district courts to screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity.  See Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a).  The Court must dismiss a prisoner's civil rights complaint, or any portion of that complaint or amended complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b); see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007); Liner v. Goord, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that under §§ 1915, 1915A, sua sponte dismissals of frivolous prisoner complaints are not only permitted but mandatory).  The Court is required to dismiss the action as soon as it makes such a determination.  See 28 U.S.C. § 1915A; Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *2 (E.D.N.Y. May 18, 2021).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally.  See Sealed Plaintiff v. Sealed Defendant,

537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).  However, a complaint or amended complaint must plead sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011).  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

    2. Section 1983

        Section 1983 authorizes a civil claim for damages against any person who, acting under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or the laws of the United States.  See 42 U.S.C. § 1983; Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under Section 1983, a plaintiff must "allege that (1) the

challenged conduct was attributable at least in part to a person who was acting under color of state law[,] and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992).

B.   Application

1.   Claims Against NY State

Plaintiff's claims against NY State are barred by the Eleventh Amendment. "Under the Eleventh Amendment, a state and its agencies are generally immune from suit in federal court." Williams v. N.Y.S. Off. of Mental Health, No. 10-CV-1022, 2014 WL 1311405, at *5 (E.D.N.Y. Mar. 31, 2014). Neither of the two exceptions to this rule, i.e., "an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of the immunity by Congress," id., apply here. First, "Section 1983 does not abrogate the Eleventh Amendment immunity of the States." Id. Second, New York has not waived its immunity from suit. See

<u>Harrison v. New York</u>, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) ("It is well established that New York State has not waived its sovereign immunity from Section 1983 claims." (internal quotation marks, and citation omitted)).  Therefore, the State is entitled to Eleventh Amendment immunity from Plaintiff's Section 1983 claims.  <u>See, e.g.</u>, <u>KM Enters., Inc. v. McDonald</u>, 518 F. App'x 12, 13 (2d Cir. Apr. 30, 2013) ("As a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." (citing U.S. Const. amend. XI)); <u>London v. Nassau County Dist. Attorney's Off.</u>, No. 20-CV-3988, 2020 WL 7699644, at *7 (E.D.N.Y. Dec. 28, 2020) ("Eleventh Amendment immunity bars Plaintiff's claims for damages against the State of New York").  Thus, Plaintiff's Section 1983 claims against NY State are not plausible and are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).[5]

---

[5]  Moreover, NY State is not a "person" within in the meaning of Section 1983.  <u>See</u> <u>Carter v. New York</u>, 316 F. Supp. 3d 660, 667 (S.D.N.Y. 2018) ("[U]nder Section 1983, states are not even considered "persons" subject to liability.") (citing <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").  Accordingly, for this additional reason, Plaintiff's Section 1983 claims against NY State are not plausible.

2.   Claims Against Suffolk County and the Jail

As a threshold matter, "[t]he Jail is a non-suable entity because, under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." Holloway v. Suffolk County Corr. Fac., Med., No. 21-CV-5011, 2021 WL 5324889, at *3 (E.D.N.Y. Nov. 16, 2021) (Seybert, J.) (internal quotation marks omitted; citation omitted); see also Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)).   Therefore, Plaintiff's claims against the Jail are implausible and are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A.

Moreover, it is well-established that a municipality, like Suffolk County, cannot be held liable under Section 1983 on a respondeat superior theory.   See Monell v. Dep't of Soc. Servs. of N.Y. City, 436 U.S. 658, 691 (1978); Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020) ("Monell expressly prohibits respondeat superior liability for municipalities" (citations omitted)).   Rather, to state a claim against a municipality under Section 1983, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom."   Tafolla v. County of Suffolk, No. 17-CV-4897, 2021 WL

16

3675042, at *10 (E.D.N.Y. Aug. 19, 2021) (Seybert, J.) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 314 (2d Cir. 2015)).  To establish the existence of a municipal policy or custom, a plaintiff must allege:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread as to practically have the force of law or that was so manifest as to imply the constructive acquiescence of senior policy-making officials; or (4) that a policymaking official exhibited deliberate indifference to constitutional deprivations caused by subordinates.

Avant, 2021 WL 1979077, at *3 (cleaned up).

    a. Claims Against Suffolk County Arising from the Mail

Here, when liberally construing the Amended Complaint, there are no factual allegations that a municipal policy or custom existed which caused the alleged constitutional deprivations relating to Plaintiff's mail. (See Am. Compl., in toto.)  Rather, Plaintiff alleges that the practice and custom in New York State is "for prison officials to make sure inmates legal mail is opened in their presence."  (Id. at 12.)  Indeed, Plaintiff alleges that he sent mail to himself and, consistent with that practice, he received it sealed.  (Id.)  Given that Plaintiff cites to only a

single instance, on December 9, 2020, when his legal mail was delivered to him opened (id. at 10, 28), his allegations fall well-short of the widespread practice or policy required to impose municipal liability.  See, e.g., Delacruz v. City of N.Y., No. 15-CV-3030, 2016 WL 5390898, at *4 (S.D.N.Y. Sept. 26, 2016) (finding "only a single instance of delay of [plaintiff's] mail by the City . . . d[id] not constitute a widespread practice or policy, much less one that is deliberate and malicious") (citing DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) ("'[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'") (quoting Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1992)).

Nor has Plaintiff adequately alleged that the claimed delay of or interference with his mail was pursuant to some official policy, practice, or custom.  (See Am. Compl., in toto.) In this regard, Plaintiff has "failed to identify a 'single action' by a specific official with final policymaking authority that led to the alleged constitutional violation."  Okongwu v. County of Erie, No. 21-1025, 2022 WL 6585217, at *1 (2d Cir. Oct. 7, 2022) (Summary Order) (quoting Hu v. City of N.Y., 927 F.3d 81, 105 (2d Cir. 2019)).

Thus, in the absence of any facts from which the Court could reasonably construe a plausible Section 1983 claim against Suffolk County with regard to the mail protocols at the Jail, such claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(b).

b. Claims Challenging Suffolk County's COVID-19 Policy

In contrast, Plaintiff has adequately alleged that there was a municipal policy concerning the protocol for the quarantine of inmates in light of the COVID-19 virus.  (Id. at 30, 35-37.) Indeed, the Amended Complaint alleges that, upon Plaintiff's arrival at the Jail, "he was processed and immediately housed in the reception unit to quarantine for fourteen (14) days which is Suffolk County New York and Sheriff Toulon's policy for all new inmate arrivals, including Plaintiff."  (Id. at 30.)  Plaintiff also alleges that there is a policy to place all inmates in quarantine who have been exposed to an inmate who tests positive for the COVID-19 virus. (Id. at 31-37.)

At the time he filed the Amended Complaint on September 26, 2022, Plaintiff was post-conviction, having been convicted by a jury on July 18, 2022 of several felony drug and weapon possession charges.  See https://iapps.courts.state.ny.us/webcrim (last visited on October 13, 2022).  Thus, his deliberate

19

indifference claims arise under the Eighth Amendment. See Gazzola v. County of Nassau, No. 16-CV-0909, 2022 WL 2274710, at *8 (E.D.N.Y. June 23, 2022) ("'A post-conviction-prisoner's deliberate indifference claim is analyzed under the Eighth Amendment while the same claim raised by a pre-trial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment.'" (quoting Horace v. Gibbs, 802 F. App'x 11, 13-14 (2d Cir. Feb. 6, 2020) (citing Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017))).

The Eighth Amendment to the U.S. Constitution protects against the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. "The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm to a sentenced prisoner." Pagan v. Rodriguez, No. 20-CV-0251, 2020 WL 3975487, at *4 (D. Conn. July 12, 2020) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994), and Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)).

> [To] establish an Eighth Amendment claim of
> deliberate indifference to safety, a prisoner
> must show that: (1) he was subject to
> conditions of confinement that posed an
> objectively serious risk of harm, as distinct
> from what a reasonable person would understand
> to be a minor risk of harm; and (2) a defendant
> prison official acted not merely carelessly or

> negligently but with a subjectively reckless
> state of mind akin to criminal recklessness
> (i.e., reflecting actual awareness of a
> substantial risk that serious harm to the
> prisoner would result).

Id. (citations omitted); Darnell, 849 F.3d at 29 (noting that an

Eighth Amendment deliberate indifference claim requires that

Plaintiff satisfy two elements: (1) an "objective" element, which

requires a showing that the challenged conditions are sufficiently

serious, and (2) a "mental" element, which requires a showing that

the officer(s) acted with at least deliberate indifference to the

challenged conditions).

"[T]here is no question that an inmate can face a

substantial risk of serious harm in prison from COVID-19 if a

prison does not take adequate measures to counter the spread of

the virus." Chunn v. Edge, 465 F. Supp. 3d 168, 200 (E.D.N.Y.

2020). Indeed:

> [c]ourts have long recognized that conditions
> posing an elevated chance of exposure to an
> infectious disease can pose a substantial risk
> of serious harm. [However], the Supreme Court
> has rejected the proposition that prison
> officials may "be deliberately indifferent to
> the exposure of inmates to a serious,
> communicable disease." Thus, determining
> whether prison conditions pose a substantial
> risk of serious harm from COVID-19, or any
> other risk, must be determined "after
> accounting for the protective measures [the
> prison system] has taken."

21

Id. (alteration in original) (first quoting Helling v. McKinney, 509 U.S. 26, 35-36 (1993); then quoting Valentine v. Collier, 956 F.3d 797, 801 (5th Cir. 2020)).

Here, Plaintiff's allegations make clear that Suffolk County implemented safety measures in response to the COVID-19 Pandemic. Moreover, those measures apparently protected Plaintiff from contracting the virus, as -- by his own allegations -- he was exposed to the virus in the Jail on five occasions and, following a period of quarantine, tested negative each time. Thus, the challenged conditions-of-confinement did not pose an objectively serious risk of harm to Plaintiff. And, even assuming that they had, Plaintiff fails to allege that any Jail "official acted but with a subjectively reckless state of mind akin to criminal recklessness (i.e., reflecting actual awareness of a substantial risk that serious harm to the prisoner would result)." Porter v. Fam. Serv. League, No. 21-CV-5120(JS)(ARL), 2021 WL 5324888, at *3 (E.D.N.Y. Nov. 16, 2021).

Further, Plaintiff's allegations that the quarantine conditions, e.g., twenty-three hour's daily lock down with one hour for various activities (see Am. Compl. at 30, 33), violate the Eighth Amendment are not plausible. Assuming the truth of Plaintiff's allegations, "when a prison regulation impinges on

22

inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987).  Indeed, "the Court must defer to the broad discretion of prison authorities in their attempt to control the spread of COVID-19 within their facility.  That is, even 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'"  Jones v. County of Allegheny, No. 21-CV-1094, 2022 WL 2806779, at *7 (W.D. Pa. June 24, 2022) (quoting Turner, 482 U.S. at 89), report and recommendation adopted, 2022 WL 2803111 (W.D. Pa. July 18, 2022).  Thus:

> [b]ecause it is difficult to social distance in a correctional setting, the Court cannot second guess where authorities move those who test positive, those who refuse to be vaccinated, those who are more vulnerable to serious complications should they contract COVID-19, and those who recover from COVID-19.  That is, the list of relevant considerations for authorities is long and the Court will not disturb that administrative decision-making.

Jones, 2022 WL 2806779 at 7; see also Burrell v. Annucci, No. 22-CV-0701, 2022 WL 4618737, at *10 (N.D.N.Y. Sept. 30, 2022) (sua sponte dismissing pro se Section 1983 complaint finding allegations did not establish an Eighth Amendment claim in the absence of allegations that defendants failed to implement state, federal,

and DOCCS guidelines "knowingly and disregarding an excessive risk" to plaintiff's health or safety); Carolina v. Feder, No. 20-CV-0658, 2021 WL 268854, at *8 (D. Conn. Jan. 26, 2021) (in rejecting Eighth Amendment challenge to forced quarantine, recognizing that "[i]n normal times, courts must 'accord substantial deference to the professional judgment of prison' officials on matters of prison administrations" and that "[i]n attempting to prevent and stem COVID-19 outbreaks, prison officials are plainly entitled to that substantial deference [since] COVID-19 poses an incredible risk in prisons and detention centers" (citing United States v. Skelos, 15-CR-0317, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020) ("Jails and prisons are powder kegs for infection."); additional citation omitted)), reconsideration denied, 2021 WL 723534 (D. Conn. Feb. 24, 2021).

Similarly, courts have routinely upheld the involuntary placement of inmates in administrative segregation for protective custody for periods of time far in excess of the ten or fourteen days of which Plaintiff complains.  See, e.g., Milner v. Lamont, No. 20-CV-1245, 2022 WL 2110971, at *10 (D. Conn. June 9, 2022) (upholding 75-day involuntary quarantine finding plaintiff "ha[d] not plausibly alleged that the denial of his recreation and shower privileges was unwarranted") (citing Pape v. Cook, No. 20-CV-1324,

2021 WL 2186427, at *10 (D. Conn. May 28, 2021) ("[G]iven the existence of the restriction on out of cell exercise during Mr. Pape's [fifteen-day] period of confinement because of his exposure to his cellmate, who had exhibited symptoms of having contracted COVID-19, Mr. Pape has not plausibly alleged a constitutional violation.")); Herbert v. Smith, No. 20-CV-6348, 2021 WL 3292263, at *6 (S.D.N.Y. Aug. 2, 2021) (dismissing Fourteenth Amendment conditions-of-confinement claim explaining, "although Plaintiff does not specify why he was denied recreation periods, the timing of the alleged denials . . . indicates that Plaintiff was denied recreation periods not because of Defendants' deliberate indifference; but rather, as a result of health and safety restrictions implemented at [his facility] to prevent the COVID-19 virus's spread among the inmate population -— a sufficiently 'unusual circumstance' to justify such a denial"); see also Tavares v. Amato, 954 F. Supp. 2d 79, 92 (N.D.N.Y. 2013) (finding Plaintiff's allegation that he was confined for 132 days "in [protective] administrative segregation for twenty-three hours a day, only allowed to shower during his one hour long recreation, prohibited from wandering around outside of his cell, and being forced to pick and choose which amenities he wanted to avail himself to given his limited amount of time outside of his cell,

25

are insufficient to support an Eighth Amendment claim"); <u>Davidson v. Coughlin</u>, 968 F. Supp. 121, 131 (S.D.N.Y. 1997) (finding that the denial of "all outdoor exercise" for "fourteen days in a row" does not "implicate Eighth Amendment concerns").[6]

Thus, Plaintiff has not plausibly alleged a deprivation of his Eighth Amendment rights by Suffolk County.  Accordingly, such claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(i)-(ii),1915A(b)(1).

3.   <u>Claims Against Sheriff Toulon</u>

To state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation.  <u>See</u> <u>Farid v. Elle</u>, 593 F.3d 233, 249 (2d Cir. 2010). In <u>Iqbal</u>, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

---

[6]  Even if the Court were to liberally construe the <u>pro se</u> Amended Complaint to allege a due process, rather than a deliberate indifference, claim, it too would fail.  "No court has held that a hearing is required before an inmate is placed in medical quarantine."  <u>Milner</u>, 2022 WL 2110971, at *11 (citing <u>Pape</u>, 2021 WL 2186427, at *12 (dismissing procedural due process challenge to confinement in quarantine for fifteen days without a hearing by sentenced inmate)).

Constitution." Iqbal, 556 U.S. at 676. A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law and should be dismissed. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. Jan. 12, 2010).

Here, although Plaintiff names Sheriff Toulon as a Defendant in the caption of his Amended Complaint, Plaintiff includes no factual allegations of conduct or inaction attributable to Sheriff Toulon. (See Am. Compl., in toto.) Indeed, with regard to his claims concerning the mail, Plaintiff alleges that, following the denial of his grievance and appeal thereof, the Citizens Policy and Complaint Review Council ("CCRC") "sent their decision . . . to Sheriff Toulon" and apprised him that "the requirement pursuant to 9 NYCRR Sec. 7004.2(e) was not observed." (Id. at 13-14.) According to the Amended Complaint, Sheriff Toulon "chose to ignor[e]" this requirement and "failed to supervise his subordinates because John Doe #2, John Doe #3, and John Doe #4 continues to mail Plaintiff's mail out untimely." (See id. at 14.) Further, Plaintiff claims that "Sheriff Toulon failed to act on information indicating that these incidents and violations is [sic] continuously occurring. Mr. Toulon should have learned of the violation through Plaintiff's grievance #Y-

27

2022-025 which was appealed by the CCRC, a copy of which was sent to him . . . and he should have remedy [sic] the wrong. . . . Mr. Toulon acted with negligence in supervising his subordinates." (Id. at 19, 29.)

To the extent Plaintiff seeks to impose Section 1983 liability on Sheriff Toulon given the supervisory position he holds, the Second Circuit has made clear that there is "no special test for supervisory liability." Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020). Rather, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." Id. at 620. However, "bald assertions and conclusions of law" are insufficient to establish personal involvement. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). Accordingly, given Plaintiff's conclusory and speculative allegations that Sheriff Toulon was "neglig[ent] in managing his subordinates", Plaintiff's Section 1983 claims against Sheriff Toulon are implausible.

Further, insofar as Plaintiff complains that the claimed mail delay was brought to Sheriff Toulon's attention and he failed to remedy it, such allegation is insufficient to render Plaintiff's

28

Section 1983 claim against Sheriff Toulon plausible. <u>See</u> <u>Tangreti</u>, 983 F.3d at 620 ("[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had."). Accordingly, Plaintiff's Section 1983 claims against Sheriff Toulon are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).[7]

> 4.  <u>Section 1983 Claims Against the Individual</u>
>     <u>Correction Officers</u>

Even construing the Amended Complaint liberally, Plaintiff's allegations do not set forth a plausible Section 1983 claim against any of the unidentified individual Correction Officers. Liberally construed, Plaintiff attempts to allege a denial of his First Amendment rights arising from the alleged interference with his mail, including mailing delays, which could be construed as a denial of access to the court. Plaintiff also alleges a deprivation of his Fourth Amendment rights based upon the opening of his mail on December 9, 2020. The Court addresses each of these claims below.

---

[7] Moreover, even if Plaintiff had adequately pled supervisory liability, for the reasons set forth herein, he has not alleged a plausible Constitutional deprivation against any Defendant.

a. <u>Interference with Plaintiff's In-Coming Legal Mail</u>

"A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003). Courts have long afforded "greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." <u>Id.</u> at 351. To state a claim for a violation of such a right, a "prisoner must show that the interference with his mail was both regular and unjustified." <u>Antrobus v. City of N.Y.</u>, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014); <u>Davis</u>, 320 F.3d at 351. "[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation." <u>Id.</u> at 351-52. But as few as two incidents of mail tampering may constitute a First Amendment violation if indicative of "regular" and "unjustifiable" interference with a prisoner's mail. <u>Id.</u> at 351; <u>see also Washington v. James</u>, 782 F.2d 1134, 1139 (2d Cir. 1986).

Here, even upon a liberal construction, Plaintiff simply does not allege enough facts suggesting that Defendants interfered with his mail in a manner that rises to the level of a constitutional violation. Though Plaintiff alleges that his "legal mail was delivered to him opened" on December 9, 2020, (Am. Compl., ECF No. 8, at 9-10), this single, isolated incident does

not suggest regular or unjustified interference with Plaintiff's mail or that it hindered his legal matters.  See <u>Labossiere v. Downstate Corr. Facility</u>, No. 21-CV-10540, 2022 WL 356549, at *5 (S.D.N.Y. Feb. 7, 2022) (<u>sua sponte</u> dismissing general mail tampering claim in the absence of allegations suggesting "regular and unjustifiable interference with [plaintiff's] mail"); <u>Amaker v. Lee</u>, No. 13-CV-5292, 2019 WL 1978612, at *14 (S.D.N.Y. May 3, 2019) ("[T]here is no constitutional violation unless the mail tampering is regular and unjustifiable rather than an isolated incident) (citing <u>Shepherd v. Fisher</u>, No. 08-CV-9297, 2011 WL 3278966, at *2 (S.D.N.Y. July 27, 2011) ("[A]n inmate must allege that the tampering was part of an ongoing practice of unjustified censorship or that it prejudiced the inmate's legal actions."); further citation omitted)).  Thus, Plaintiff's Section 1983 claims alleging a deprivation of his First Amendment right arising from his opened incoming mail are not plausible and are thus DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(i)-(2), 1915A(b)(1).

> b. <u>Claims Alleging a Deprivation of Access to the Court</u>

In addition, delay or interference with an inmate's mail may give rise to a First Amendment claim for deprivation of access to the courts.

> Courts of Appeals have recognized two variants of right-of-access claims.  First, plaintiffs may allege that "systemic official action" frustrated their ability to file a suit.  The object of this type of suit "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed."  Such suits are therefore labeled "forward-looking."  The second variant of right-of-access claims is "backward-looking access claims," covering suits that "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future."  This may occur, for instance, if the official action "caused the loss or inadequate settlement of a meritorious case."  <u>In either circumstance, however, "the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."</u>

<u>Sousa v. Marquez</u>, 702 F.3d 124, 127-28 (2d Cir. 2012) (variously quoting and citing <u>Christopher v. Harbury</u>, 536 U.S. 403, 413-14, n.11, 415 (2002)) (emphasis added).  Regardless under which theory one brings an access-to-courts claim,[8] "a plaintiff must show that the defendant caused the plaintiff injury or, put less succinctly, that the defendant took or was responsible for actions that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim."  <u>Oliva v. Town of Greece</u>, 630 F. App'x 43, 45 (2d Cir. Nov. 17, 2015) (summary order) (collecting cases); <u>see also</u>

---

[8]  "The viability of backward-looking right-of-access claims is far from clear in this Circuit . . . ."  <u>Sousa</u>, 702 F.3d at 128.

Mahon v. Moultrie, 657 F. App'x 52, 53 (2d Cir. Aug. 24, 2016)
("To state a claim of denial of court access, a plaintiff must
allege that the defendant took or was responsible for actions that
hindered a plaintiff's efforts to pursue a legal claim <u>and</u> that
the defendant's actions resulted in actual injury to the
plaintiff." (emphasis added)); <u>Corines v. Westchester County Dep't
of Corr.</u>, No. 22-CV-5179, 2022 WL 4341999, at *5 (S.D.N.Y. Sept.
19, 2022) ("A claim for deprivation of access to the courts
requires two allegations: (1) that the plaintiff has a <u>valid</u>
underlying cause of action separate from the right-of-access
claim; and (2) that the plaintiff has suffered frustration or
hindrance of the litigation that has been caused by the defendant's
actions." (emphasis added)) (citing <u>Harbury</u>, 536 U.S. at 415;
further citation omitted)).  Plaintiff cannot plausibly make out
such a claim in this instance.[9]

---

[9]  This claim is being analyzed as a so-called "forward-looking"
right-of-access claim, where the object of such a claim is to place
a plaintiff in a position to pursue a separate claim for relief
once the frustrating condition has been removed.  <u>See</u> <u>Sousa</u>, 702
at 127 (citing <u>Harbury</u>, 536 U.S. at 413, 414 n.11).  Even if the
Court were to examine Plaintiff's access-to-court claim under the
"backward-looking" rubric, it would fail since Plaintiff cannot
satisfy all four elements required to maintain such a claim:

> First, the plaintiff must identify a
> nonfrivolous, arguable underlying claim.
> Second, the plaintiff must establish that the
> defendant took or was responsible for actions
> that hindered a plaintiff's efforts to pursue

i.   Regarding General Incidents of Interference
with Plaintiff's Legal Mail

To the extent Plaintiff complains about: (1) his legal
mail having been "opened" when he received it on December 9, 2022
(Am. Compl. at 10-12); (2) his not having received certified mail
receipts on six occasions (id. at 9, 21-26); and (3) there having
been a delay on January 13, 2022 and March 24, 2022 in mailing out
three envelopes containing unspecified "legal mail" (id. at 12-
13, 14-15), these allegations do not plausibly allege a denial-
of-access-to-court claim, since Plaintiff fails to asset how the

---

a legal claim.  Third, the plaintiff must show
that the defendant's alleged conduct was
deliberate and malicious.   Fourth, the
plaintiff must demonstrate that the
defendant's actions resulted in an actual
injury to the plaintiff.

Corines v. Westchester County, Dep't of Corr., No. 22-CV-5179,
2022 WL 4341999, at *6 (S.D.N.Y. Sept. 19, 2022) (quoting Jean-
Laurent v. Lawrence, No. 12-CV-1502, 2015 WL 1208318, at *4
(S.D.N.Y. Mar. 17, 2015)).  Plaintiff is unable to identify a
nonfrivolous, arguable underlying claim; Plaintiff's original
complaint and amended complaint in the February 2022 Action were
dismissed because his Section 1983 claims, based upon a conspiracy
theory of liability, were supported by mere conjectures and
conclusive allegations.  Even if that were not so, Plaintiff fails
to allege that the challenged conduct was deliberate and malicious,
stating, instead, that the reason his outgoing mail was delayed
was because the officer responsible for mailing it "was on
vacation."   (Am. Compl. at 17.)   Finally, Plaintiff cannot
demonstrate that the Defendants' actions in delaying his May 2022
outgoing mail resulted in an actual injury to the Plaintiff.  (See
infra at 37-39.)

alleged incidents frustrated or otherwise hindered a nonfrivolous legal claim.   See Corines, 2022 WL 4341999 at *6 (sua sponte dismissing denial-of-access-to-court claims where, like here, the plaintiff did not allege how defendant's actions in failing to provide a copy of the mail receipt frustrated or hindered his nonfrivolous legal claim) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint.")).   Nor has Plaintiff alleged suffering an injury caused by these incidents.

> ii.   Regarding the Amended Complaint in the February 2022 Action

Plaintiff alleges that, in its May 2022 M&O, this Court dismissed his Section 1983 claims against his former attorneys because they are not state actors acting under color of law.   (See Am. Compl. at 20.)   He further alleges his February 2022 Action "was prejudiced because he attempted to amend his Conspiracy Claim," but the Court dismissed that Action before Plaintiff was able to file his amended complaint in which "he amended that his attorneys 'Private actors' conspired with 'State actors'."   (Id.; see also id. at 18 ("The Plaintiff had a pending legal action in the United States District Court (EDNY) Docket #22-CV-00974-JS-AYS that was prejudiced by the delay of his legal mail being mailed

35

out late.").)  He contends "[t]he fact that John Doe(s) (2-4) held Plaintiff's amended Complaint (legal mail) for a week and mailed it out late to the Court, the Court rejected his Complaint two (2) days before the Court received the amended Complaint."  (Id. at 20-21.)

As an initial matter, in his February 2022 Action, Plaintiff did not present a valid underlying cause of action.  The Court found "Plaintiff's Complaint must be dismissed because none of the Defendants are state actors; nor does Plaintiff properly allege a conspiracy."  (February 2022 Action, May 2022 M&O at 8 (concluding dismissal was warranted because "Plaintiff's allegations are speculative and conclusory, and do not set forth a plausible Section 1983 claim against the Defendants").)  It reached the same conclusion upon careful consideration of Plaintiff's Amended Complaint, which it accepted for filing upon reconsideration:[10]

> Even a pro se must include some factual allegations from which the Court can reasonably construe: an agreement between any of the Defendants and a state actor; any agreement to act in concert to inflict an unconstitutional injury; or, any overt act done to inflict an unconstitutional injury on Plaintiff causing damages.

---

[10]  (See February 2022 Action, Oct. 24, 2022 Mem. & Order, ECF No. 19, at 12-13.)

> As is readily apparent here, Plaintiff's
> allegations are speculative and conclusory,
> and do not set forth a plausible Section 1983
> claim against the Defendants. Accordingly,
> the Amended Complaint does not allege a
> plausible Section 1983 claim and is <u>sua sponte</u>
> DISMISSED . . . .

(<u>Id.</u> at 19-20.)

Moreover, even assuming <u>arguendo</u> that Plaintiff alleged a valid underlying cause of action, to the extent he bases his denial-of-access-to-court claim on the delay from May 17, 2022 to May 24, 2022 in mailing out his amended complaint, that basis is unavailing. While, at first blush, the delay appears to have frustrated or hindered Plaintiff's litigation of the February 2022 Action given that on May 23, 2022, the Court dismissed Plaintiff's complaint, denied him leave to amend, and therefore initially rejected Plaintiff's amended complaint received two days later, subsequent history in the case, of which the Court takes judicial notice,[11] demonstrates otherwise.

---

[11] It is well-established that "[i]n the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case <u>sub judice</u>." <u>Jianjun Lou v. Trutex, Inc.</u>, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012); <u>see also</u> <u>Rothman v. Gregor</u>, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleading in another lawsuit); <u>Young v. Selsky</u>, 41 F.3d 47, 50-51 (2d Cir. 1994) (taking judicial notice of defendant's testimony in a prior action). A court "may also 'take judicial notice of its own orders,' and 'its own records'." <u>Rosado-Acha v. Red Bull Gmbh</u>, No. 15-CV-7620, 2016

Plaintiff sought to appeal the Court's May 23, 2022 Order, filing a Notice of Appeal on June 13, 2022. (See February 2022 Action, Not. of App., ECF No. 16.) As stated supra, because of his pro se status and his assertions regarding delays in out-going mail, the Court liberally construed Plaintiff's Notice of Appeal as a motion for reconsideration of its denial of leave to amend. (See id., Oct. 24, 2022 Mem. & Order, ECF No. 19.) Thereafter, the Court: granted reconsideration "to prevent manifest injustice"; accepted Plaintiff's amended complaint for filing nunc pro tunc; then carefully considered whether the amended complaint set forth a plausible claim; but, found it did not.

---

WL 3636672, at *7 (S.D.N.Y. June 29, 2016) (first quoting Ryan v. Cholakis, No. 13-CV-1451, 2014 WL 803776, at *4 n.3 (N.D.N.Y. Feb. 25, 2014); then quoting Hatch v. Morosco Holding Co., 56 F. 2d 640, 640 (S.D.N.Y. 1932); and citing United States v. Currency in Total Amount of 2,223.40, 157 F. Supp. 300, 303 (N.D.N.Y. 1957) ("[T]here seems to be no doubt as to the power of the court to take judicial notice of its own records in the same or in an interrelated case.")).

Here, the Court is relying upon the following found in the February 2022 Action, which is prior litigation that relates to the instant case: the pleadings; related documents; and the Court's owns orders and records. See Rosado-Acha, 2016 WL 3636672, at *7 (in deciding a Rule 12(b) dismissal motion, taking judicial notice of documents that "were neither attached to nor incorporated by reference in Plaintiff's Complaint or Amended Complaint," but which were "pleadings" and "related documents that appear in the court records of prior litigation" which related to the case before the court, of which a large number encompassed the court's "own orders," as well as its "own records in the same or an interrelated case").

(See id.)  Thus, the purported prejudice suffered by Plaintiff due to the untimely mailing of his amended complaint in the February 2022 Action was little more than an unfortunate delay swiftly addressed by the Court in a manner that spared Plaintiff the injury of being denied access to the Court as he now alleges.

Hence, given the sequence of events that occurred in the February 2022 Action, which the Court recognized was not of Plaintiff's making, but which could have caused an injury to him, i.e., foreclosing Plaintiff's opportunity to amend his complaint, in conjunction with the Court's prompt, proactive rectification of the consequences of that situation, i.e., accepting Plaintiff's amended complaint for filing and then considering it, Plaintiff has not alleged a plausible denial-of-access-court claim.  In turn, Plaintiff has not alleged a plausible Section 1983 claim against the individual Defendants and such claim is thus DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

c. Claims Alleging Unlawful Search of Plaintiff's Mail

The Fourth Amendment protects an individual's right "to be secure in [his or her] persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. CONST. amend. IV; Katz v. United States, 389 U.S. 347, 350 (1967) (The Fourth

"Amendment protects individual privacy against certain kinds of governmental intrusion."). "Prisoners, however, have a diminished expectation of privacy, and 'the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.'" Singleton v. City of N.Y., No. 21-CV-2893, 2022 WL 524669, at *4 (S.D.N.Y. Feb. 22, 2022) (quoting Hudson v. Palmer, 468 U.S. 517, 526 (1984)). Indeed, "[t]his general principle of a diminished expectation of privacy applies in all contexts of prison life." Id. (citing United States v. Amen, 831 F.2d 373, 379-80 (2d Cir. 1987) (citations omitted)).

Thus, while incarcerated, Plaintiff does not retain any privacy right protected by the Fourth Amendment with respect to the monitoring or opening of his mail. Singleton, 2022 WL 524669, at *4 ("Because Plaintiff cannot expect to keep private his communications while he was in the custody of the DOC, the decision to disclose this material did not violate the Fourth Amendment's prohibition against unreasonable searches."); Hill v. Griffin, No. 11-CV-6101, 2012 WL 92556, at *4 (W.D.N.Y. Jan. 11, 2012) (sua sponte dismissing prisoner's claims alleging that his "outgoing legal mail, confidential medical mail, incoming legal mail, and general mail, was intercepted, is not cognizable insomuch as a Fourth Amendment claim"). Accordingly, Plaintiff's Fourth

Amendment claim arising from the alleged incident on December 9, 2020 that his mail was opened is not plausible and is thus DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

C.   Leave to Amend

The Second Circuit has long advised that leave to replead should be liberally granted to pro se litigants.  See Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] pro se complaint generally should not be dismissed without granting the plaintiff leave to amend at least once . . . ."); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  "[B]ut amendment should be denied where the complaint gives no 'indication that a valid claim might be stated.'"  McKie v. Kornegay, No. 21-1943, 2022 WL 4241355, *3 (2d Cir. Sept. 15, 2022) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).  Here, given that Plaintiff has already amended his complaint, and further amendment would be futile, see, e.g., Corines, 2022 WL 4341999, at *11 (citing Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011)), together with the fact that he has several other Section 1983 complaints pending in this Court (see supra note 2), leave to further amend the claims in this case is DENIED.

41

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's IFP Application is GRANTED;

**IT IS FURTHER ORDERED** that Plaintiff's claims against the Jail, and NY State, or alleging a Fourth Amendment deprivation, are <u>sua sponte</u> DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1), and Plaintiff's remaining claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1);

**IT IS FURTHER ORDERED** that leave to further amend the Amended Complaint is DENIED;

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies any appeal from this Memorandum & Order would not be taken in good faith. Therefore, <u>in forma pauperis</u> status is DENIED for the purpose of any appeal. <u>See Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of the Court: (1) ENTER JUDGMENT accordingly and MARK THIS CASE CLOSED; and, thereafter (2) mail a copy of this Memorandum & Order and the Judgment to the <u>pro se</u> Plaintiff at his address of record, including the notation "LEGAL MAIL" on the envelope.

**SO ORDERED.**

Dated:     November _9th_ , 2022
           Central Islip, New York     _/s/ JOANNA SEYBERT_
                                        Joanna Seybert, U.S.D.J.

42